UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN ALRIDGE,<br><br>                Plaintiff,<br><br>      v.<br><br>RITE AID OF WASHINGTON, D.C., INC.,<br><br>                Defendant. | Civil Action No. 14-1952 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, John Alridge, proceeding *pro se*, brings this lawsuit against his current employer, the defendant Rite Aid of Washington, D.C., Inc.,[1] alleging employment discrimination, defamation, and "13th and 14th [A]mendments [c]ivil [r]ights" violations principally for events that occurred between November 2011 and February 2012. Compl. at 4, 9–10, ECF No. 1. The plaintiff alleges that he has suffered at least four years of harassment, *id.* at 8, forced to perform "back-breaking" labor that his coworker was not required to do, *id.* at 4, subjected to vicious rumors of being a "drug addict, alcoholic an[d t]hief," *id.* at 8, and repeatedly retaliated against by management for his attempts to report the discriminatory behavior, *id.* at 5, 9. Pending before the Court is the defendant's Motion to Dismiss. *See* Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 4. For the reasons set forth below, the defendant's motion is granted.

---

[1] Although the plaintiff initially named "Rite Aid Corporation" as the defendant in this action, the defendant avers, and the plaintiff has not objected, that Rite Aid of Washington, D.C., Inc. is "[t]he proper corporate entity." Def.'s Mot. Dismiss ("Def.'s Mot.") at 1 n.1, ECF No. 4; *see also* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 2 ("I would like to file to properly identify the defendant as Rite Aid of Washington, D.C., Inc."), ECF No. 7; Fox/Neal Order, dated April 10, 2015 at 1 n.1, ECF No. 6.

1

**I.      BACKGROUND**

In November 2011, the plaintiff, who has worked for the defendant since about 2008 and identifies himself as a "Native American Seminole and Black," was re-assigned to work as one of two Assistant Managers at a Rite Aid pharmacy located at 5600 Georgia Avenue, Washington, D.C. ("D.C. Rite Aid").  Compl. at 4 (noting that "May 2012" marked the plaintiff's "4th year working in Rite Aid Corporation").  The plaintiff's supervisor at this Rite Aid branch, store manager Bachir Jobe, is an "African" and the other employees at this store are "90% African."  *Id*.

Within his first week at the store, the plaintiff alleges that the manager "made it very clear that he did not identify with [the plaintiff] at all and did not want [him] there," and repeatedly referred to the plaintiff as "Yankee."  *Id.*  The plaintiff was frequently required to work outside "in the cold and rain" and to work overnight shifts during truck deliveries, which involve "back-breaking, heavy-labor, bone-crushing work."  *Id*.  In comparison to the plaintiff's assigned tasks, the other Assistant Manager never worked outside during the "cold, rainy, winter season," and never "had to work truck nights."  *Id.*  The other Assistant Manager was given preferable treatment, according to the plaintiff, because, although he was "born in America," his "parents are directly from Africa," and the manager "identifies with and shares the same cultural values."  *Id.*

The plaintiff avers that he "DO[ES]N'T KNOW WHY [HE] WAS TREATED THIS WAY. CULTURAL DIFFERENCES, SKIN COMPLEXION, WHERE [HE] WAS FROM, NOT FROM BUT [HE] WOULD LIKE SOME HELP IN FINDING OUT WHY." *Id*. at 4 (emphasis in original).

In December 2011, a month after the plaintiff began working at the D.C. Rite Aid, the plaintiff called the District Manager to "discuss the discriminatory, hostile and unfavorable nature" of the store manager's behavior towards him. *Id.* at 5. The District Manager, however, simply responded "Live with it," and discouraged the plaintiff from calling human resources, commenting that the plaintiff can "[c]all them but make sure you know what you are doing." *Id.*

Tensions apparently escalated. On December 30, 2011, the store manager accused the plaintiff of stealing $100 from the store. *Id.* The plaintiff called the Loss Prevention Agent Manager ("LPA") to defend himself against these accusations. The money was ultimately discovered in the deposit bag at the bank two days later, but the manager never cleared the plaintiff's name with the LPA. *Id.* On January 4, 2012, the plaintiff called the LPA regarding the "unfair treatment" by the manager, to which the LPA allegedly responded "You don't wanna go above [the District Manager] and as a friend and a fellow associate, you don't wanna call HR because it would ruin your career." *Id.*

The plaintiff alleges that, after he spoke to the LPA, the LPA then began spreading rumors, going "from store to store, telling everybody [he] was a drug addict, alcoholic an[d t]hief," which culminated in events on February 13, 2012. *Id.* at 8. An hour after the plaintiff arrived at work that day, the plaintiff alleges that the District Manager and the LPA accused him of drinking and being "a danger to the public, the customers," his coworkers and himself. *Id.* at 5. The plaintiff was then "escorted out of the store by security and [t]he District Manager," required to take a blood-alcohol test, with negative results, and immediately "suspended until further notice," without pay. *Id.* at 6; *id*. Ex. ("Controlled Substance Test Report, dated February 22, 2012") at 19, ECF No. 1.

Eleven days later, on February 24, 2012, without evidence of any wrongdoing on the part of the plaintiff, the District Manager lifted the suspension, but transferred him to another D.C. Rite Aid location that was "45-minutes to an hour away from [the plaintiff's] home," even though the plaintiff alleges that the District Manager supervised seven stores that were closer to his home. *Id.* Understandably upset at his treatment, the plaintiff contacted human resources to "discuss[] the entire matter," including "all [his] concerns and what has transpired [in] [sic] the last couple of months." *Id.* at 7. The plaintiff alleges that the human resources ("HR") representative became "defensive" when the plaintiff expressed concern about his treatment by the LPA and the District Manager, who were "lunch buddies" and had "a close professional relationship" with the HR representative. *Id.* The HR representative "assured [the plaintiff] 500% that they have no derogatory or discriminatory intentions against [the plaintiff]." *Id.*

The plaintiff continued to have difficulty upon his return to work at the new Rite Aid branch. He alleges that, due to the LPA's "slander," when he first transferred to the new Rite Aid branch, "[t]he [f]irst thing the Store manager [a]sk me was what [k]ind of drugs [was the plaintiff] on," and that "there is no drinking allowed at work." *Id.* at 8.

On March 28, 2012, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on national origin and retaliation. Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") Ex. A ("EEOC Charge") at 3, ECF No. 7-1. Due to the preceding events and the EEOC charge, the plaintiff alleges that his "hours have been cut an[d he has b]een passed over at least six different times for promotion to store manager," even though he is "[m]ore qualified than many of the manager[]s they have place[d] in the stores," and he has had "[s]ix years of management experience." Compl. at 9.

4

On August 15, 2013, the EEOC notified the plaintiff that "the EEOC is unable to conclude that the information obtained established violations of the statutes." Compl. Ex. ("EEOC Right-to-Sue Letter, dated August 15, 2013") at 18, ECF No. 1.  The notice further alerted the plaintiff of his "right to sue" the defendant under "Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act," but that such a lawsuit must be filed "**WITHIN 90 DAYS of [the plaintiff's] receipt of this notice**; or [his] right to sue based on this charge will be lost." *Id.* (emphasis in the original).

On November 15, 2013, the plaintiff filed a complaint against the defendant in this Court, Pl.'s Opp'n Ex. ("Complaint, dated November 15, 2013) at 4, ECF No. 7-1, but his application to proceed *in forma pauperis* ("IFP") was denied on November 21, 2013.  Compl. Ex. (Application to Proceed without Prepaying Fees, dated November 15, 2013) ("2013 App.") at 2, ECF No. 1. In accordance with normal practice, the Clerk's office also notified the plaintiff in a form letter that "[a]s a result of the Judge's ruling, [his] case has not been filed with our Court and is being returned to you at this time."[2]  Nearly a year later, on November 19, 2014, the plaintiff paid the requisite filing fee and filed the instant complaint, *see* Compl., ECF No. 1 (docket text accompanying entry of Compl., indicating receipt of filing fee), alleging employment discrimination, defamation and violations of his Thirteenth and Fourteenth Amendment rights, Compl. at 4–9.  The defendant's motion to dismiss the plaintiff's complaint, under Federal Rule of Civil Procedure 12(b)(6) is now ripe for resolution.  Def.'s Mot. at 1.

---

[2]    This Court takes judicial notice of this document, which is in the Clerk's office.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, [] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id*. at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

6

(second alteration in the original).  In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact.  *Twombly* at 555; *Harris v. D.C. Water and Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (in considering Rule 12(b)(6) motion, the "court must accept as true all of the allegations contained in a complaint" and "to draw reasonable inference" therefrom "that the defendant is liable for the misconduct alleged," but that tenet "is inapplicable to legal conclusions," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (internal quotations and citations omitted)).

Where, as here, the plaintiff is proceeding *pro se*, the court must "'liberally construe[]'" the complaint, applying "'less stringent standards than formal pleadings drafted by lawyers.'" *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).  The *pro se* plaintiff "must nonetheless plead 'factual matters that permit [us] to infer more than the mere possibility of misconduct." *Brown v. Whole Foods Market Group, Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015) (quoting *Atherton v. D.C. Officer of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009)).  In evaluating a *pro se* complaint, the court may "consider the affidavits and exhibits . . . filed by a *pro se* litigant [that] were intended to clarify the allegations in the complaint."  *Abdelfattah*, 787 F.3d at 533 (citing *Atherton*, 567 F.3d at 777).

### III.   DISCUSSION

The plaintiff has asserted a claim of employment discrimination, as well as additional claims for "defamation" and violations of the "13th and 14th Amendment."  Compl. at 4, 5 and 7.  The defendant contends that the plaintiff has failed to state a claim under Rule 12(b)(6) for any

of these claims.  Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 2, ECF No. 4-1.  The Court addresses each of these claims *seriatim* below.

### A.   Employment Discrimination

The *pro se* complaint is liberally construed as attempting to plead employment discrimination, in violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII").[3]  Civil Cover Sheet at 2 (citing "42 U.S.C. 2000" as cause of action), ECF No. 1-1.  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from retaliating against any individuals who "oppose any practice made an unlawful employment practice" by Title VII, *id.* § 2000e-3(a); *see also Harris*, 791 F.3d at 68 ("Title VII . . . both prohibits employers from engaging in employment practices that discriminate on the basis of race . . . and bars them from retaliating against an employee 'because he has opposed any [such] practice.'" (quoting 42 U.S.C. § 2000e-3(a)) (alteration in the original)).  At the same time, Title VII provides administrative remedies that the plaintiff must exhaust prior to bringing their claims to court.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104–05, 109 (2002); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (quoting

---

[3] Race-based discrimination and retaliation in the private employment context are also prohibited by 42 U.S.C. § 1981. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452, 457 (2008) (holding that 42 U.S.C. § 1981 encompasses claims of "retaliation for reasons related to the *enforcement* of the statutory right," and therefore extends to "an individual who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights" (emphasis in the original)); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) ("Section 1981 prohibits private employers from intentionally discriminating on the basis of race with respect to the 'benefits, privileges, terms, and conditions' of employment." (citing 42 U.S.C. § 1981 and *Runyon v. McCrary*, 427 U.S. 160, 170 (1976))).  The plaintiff, however, has not sufficiently pled a claim arising under section 1981 because he does not allege anywhere in his complaint, his EEOC charge, or his opposition to the defendant's motion to dismiss that he suffered discrimination based on race.  At most, he appears to argue that he was discriminated by his store manager based on "cultural differences," or "national origin," EEOC Charge at 3 (under the question "Discrimination based on," the plaintiff checked "national origin" and "retaliation"), noting that the plaintiff is "Native American Seminole and Black," and the manager was "African," Compl. at 4.

*Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). Namely, a Title VII plaintiff must "file a charge with the [EEOC] either 180 or 300 days 'after the alleged unlawful employment practice occurred.'" *Morgan*, 536 U.S. at 105 (quoting § 2000e-5(e)(1)). If the EEOC declines to file a civil action on behalf of the plaintiff under Title VII, as the EEOC did in the instant case, the aggrieved person may bring an action against his employer within ninety days of receiving his right to sue letter from the EEOC, 42 U.S.C. § 2000e-5(f)(1).

The defendant argues, and the Court agrees, that the plaintiff did not timely file his lawsuit alleging violation of Title VII because the EEOC mailed the plaintiff his right-to-sue letter on August 19, 2013 but the plaintiff did not file the instant complaint until November 19, 2014, more than a year later, and well outside the ninety-day statutory period. Def.'s Mem. at 6. Courts strictly enforce the ninety-day statutory limit and "'will dismiss a suit for missing the deadline by even one day.'" *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) (quoting *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006)).

The ninety-day limit, however, is not a jurisdictional bar and is thus "'subject to equitable tolling, estoppel, and waiver.'" *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *see also Maggio v. Wisconsin Ave. Psychiatric Center, Inc.*, 795 F.3d 57, 60 (D.C. Cir. 2015) (discussing whether the plaintiff is entitled to equitable tolling of the ninety-day period). A plaintiff may be entitled to equitable tolling if he "pursued [his] rights diligently" or "proved some extraordinary circumstance prevented [him] from satisfying the statute of limitations." *Dyson v. District of Columbia*, 710 F.3d 415, 416 (D.C. Cir. 2013).

The plaintiff counters that he did timely file a lawsuit against the defendant alleging employment discrimination and retaliation because he attempted to file a complaint on

9

November 15, 2013, within ninety days of his receipt of the right-to-sue letter.  Pl.'s Opp'n at 2.  The November 15, 2013 complaint, however, was improperly filed because the plaintiff did not pay the filing fee and his application to proceed IFP was denied.  2013 App. at 2.  The plaintiff did not re-file his complaint until nearly a year later, on November 19, 2014.  *See* Compl. at 1.  The plaintiff has alleged no facts in his instant complaint to justify the delay or otherwise offered any explanation for not promptly heeding the notification that his 2013 complaint was not filed with the Court.  In less egregious circumstances involving less of a delay than the year-long delay at issue here, judges on this Court have not hesitated to conclude that the *pro se* plaintiff is not entitled to equitable tolling.  *See Uzoukwu v. Metro. Washington Council of Gov'ts*, 983 F. Supp. 2d 67, 75 (D.D.C. 2013) (denying equitable tolling of the ninety-day limitation period because the plaintiff waited a month to file a motion to reconsider the denial of leave to proceed IFP and was, therefore, "inexcusably tardy"); *Obaseki v. Fannie Mae*, 840 F. Supp. 2d 341, 346 (D.D.C. 2012) (equitable tolling is not warranted where the "plaintiff failed to resubmit her complaint," after her IFP application was denied, "until ten days later," and the plaintiff "provides no explanation for the delay"); *cf. Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 840 F. Supp. 2d 192, 196–97 (D.D.C. 2012) (the plaintiff "diligently pursued his claim" where he "refiled his complaint within three or four days of receiving notice" that "his motion for leave to proceed IFP was denied").

       The Court therefore finds that the plaintiff neither diligently pursued his rights against the defendant nor demonstrated any extraordinary circumstances preventing him from doing so.  Consequently, the plaintiff is not entitled to equitable tolling to excuse the untimeliness of his

discrimination and retaliation claims, construed to be alleging a violation of Title VII.[4]
Accordingly, the plaintiff's employment discrimination claims under Title VII are dismissed.[5]

### B. Defamation

The plaintiff alleges his supervisors defamed him by going "store to store telling everybody [he] was a drug addict, alcoholic an[d t]hief," culminating in the events on February 13, 2012, when he was accused of drunkenness, escorted out of work, forced to take a blood alcoholic test and ultimately suspended without pay for two weeks. Compl. at 8. According to the plaintiff, the plaintiff's rumored substance abuse problems has affected the way he is treated by his neighbors and at the new Rite Aid branch to which he was re-assigned. *Id.* The defendant counters that the plaintiff's defamation claim is timely barred and, consequently, must be dismissed. Def.'s Mem. at 9.

The District of Columbia provides a one-year limitations period for defamation claims. *See* D.C. Code § 12-301 ("Except as otherwise specifically provided by law, actions for the

---

[4] To the extent the plaintiff attempts to bring a retaliation claim under Title VII based upon his allegation that as a result of his filing an EEOC charge, his "[h]ours have been cut an[d he has b]een passed over at least six different times for promotion to store manager," Compl. at 9, the plaintiff has failed to administratively exhaust this claim. A plaintiff must file a separate charge in order to exhaust administratively each discrete retaliatory or discriminatory act. *Morgan*, 536 U.S. at 114. The plaintiff has not alleged that he filed a new charge with EEOC alleging these particular retaliatory acts. Accordingly, the plaintiff may not bring a Title VII claim based on these acts of retaliation.

[5] Even if the plaintiff had timely filed his complaint, his Title VII claim as to the underlying direct employment discrimination would still fail. "Under Title VII . . . the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The plaintiff plainly states in his complaint that he is unsure about the reason for his allegedly unfair treatment by the store manager at the D.C. Rite Aid, and indicates that he filed this lawsuit for "HELP IN FINDING OUT WHY." Compl. at 4 (emphasis in the original). Though the plaintiff "need not plead facts showing each of these elements in order to defeat a motion under Rule 12(b)(6)," *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015), he must still allege sufficient facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. In the instant case, the plaintiff has not alleged sufficient facts to support the reasonable inference that the manager's mistreatment of the plaintiff was motivated by the plaintiff's membership in a protected class. In fact, the plaintiff shares the same race as the store manager and the same national origin, the United States, as the other Assistant Manager, who allegedly received preferential treatment. *Id.* The plaintiff's retaliation claims, on the other hand, may have had a better chance at survival under Title VII had they been administratively exhausted and timely filed.

following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: . . . (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment – 1 year."); *Maupin v. Haylock*, 931 A.2d 1039, 1041-42 (D.C. 2007) ("A claim for defamation must be filed within one year of accrual of the cause of action.").

The defamation that the plaintiff alleges occurred no later than February 2012, since that is "one of the reason[s] [he] was drug tested" on February 13, 2012. Compl. at 8. The plaintiff did not file the instant lawsuit until November 19, 2014, however, which places this claim outside the one-year statutory limitations period. Accordingly, the plaintiff's defamation claim is dismissed.

### C. Thirteenth Amendment Violation

The plaintiff also brings a Thirteenth Amendment claim, arguing that he was subjected to involuntary servitude when he was "forced to accept the transfer of location" to a new Rite Aid branch that is "a 45-minute/1 hour drive to other side of the town" because he had "no other choice to be able to pay bills." Pl.'s Opp'n at 3. The Thirteenth Amendment, however, does not provide a free-standing, implied private right of action. [6] *See Richardson v. Loyola College in Maryland, Inc.*, 167 Fed. Appx. 223, 225 (D.C. Cir. 2005) ("[T]he Thirteenth Amendment does not provide an independent cause of action for discrimination."); *Doe v. Siddig*, 810 F. Supp. 2d 127, 135–36 (D.D.C. 2011) (collecting cases and noting that "[c]ourts in this Circuit have

---

[6] Even if the plaintiff's Thirteenth Amendment claim were construed to have been brought under 42 U.S.C. § 1981, which was enacted under the authority of the Thirteenth Amendment to eradicate the badges and incidents of slavery, *Runyon v. McCrary*, 427 U.S. 160, 170 (1976), the claim would nonetheless fail. As explained *supra* in n.2, the plaintiff failed to allege sufficient facts to bring a claim, under section 1981, that he was discriminated against based on his race.

consistently held that there is no private right of action under the Thirteenth Amendment"). Accordingly, the plaintiff's Thirteenth Amendment claim is dismissed.

### D. Fourteenth Amendment Violation

Lastly, the plaintiff asserts a Fourteenth Amendment claim against his private employer. The Fourteenth Amendment, however, only applies to actions taken by state actors, not by private entities. *See* U.S. CONST. amend. XIV § 1 ("No *State* shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States; nor shall any *State* deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction of the equal protection of the laws." (emphasis added)); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (noting that "the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities"). As the defendant points out, "Plaintiff does not, nor could he, allege that Rite Aid is a state actor." Def.'s Mem. at 11. Accordingly, the plaintiff has failed to state a claim under the Fourteenth Amendment.

## IV. CONCLUSION

The plaintiff's allegations, which are assumed to be true for purposes of this motion, of unfair treatment and a difficult employment situation made worse, rather than ameliorated, when he sought assistance from defendant's employees outside of the Rite Aid branch where he was assigned, are troubling. Not every instance of unfair treatment has a legal remedy, however, especially if the claims are untimely filed and the reason for the treatment cannot be clearly identified as stemming from the type of discrimination that falls within the purview of Title VII and related statutes.

For the foregoing reasons, the defendant's motion to dismiss, ECF No. 4, is granted. The Clerk of the United States District Court for the District of Columbia is directed to close this case.

An Order consistent with this Memorandum Opinion will be issued contemporaneously.

Date: November 30, 2015

_____
BERYL A. HOWELL
United States District Judge